FILED

DEC 0 3 2018

Clerk, U.S. District Court
Texas Eastern

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| **CRAIG CUNNINGHAM,** **Plaintiff,** **v.** Jeff Lakes, Ramsey Debt Relief, LLC, aka Ramsey Services, LLC, National Consolidated Services, LLC, Chandler Construction, LLC, Cori L. Marx **Defendant** | § § § § § **Civil Case No. 4:18-cv-00747-ALM-** **CAN** § § § § |

## Plaintiff's Amended Complaint

### Parties

1. The Plaintiff is Craig Cunningham and natural person and was present in Texas for all calls in this case in Collin County.

2. Jeff Lakes is CEO and corporate officer for all of the entities named by the Plaintiff in this case. He can be served at 3922 E University Dr., Ste 6 Phoenix, AZ 85034 or 5105 W Winston Dr., Laveen, AZ 85339.

3. Ramsey Services, LLC is a Wyoming Corporation operating out of Nevada with a registered agent of Registered Agents, Inc., 401 Ryland St., Ste 200-A, Reno, NV 89502.

4. National Consolidated Services, LLC is a Wyoming Corporation operating out of Nevada with a registered agent of Registered Agents, Inc., 401 Ryland St., Ste 200-A, Reno, NV 89502.

5. Chandler Construction, LLC is a Wyoming Corporation operating out of Nevada with

a registered agent of Registered Agents, Inc., 401 Ryland St., Ste 200-A, Reno, NV
89502.

6. Cori L. Marx is a Colorado Attorney who can be served at 9101 Harlan Street, ste
   255, Westminster, CO 80031 or 3009 Irving St., Denver, CO 80211 or 5714 Kipling
   Parkway, unit 207 Arvada CO 80002

7. John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

**JURISDICTION AND VENUE**

8. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over
   Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal
   statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has
   supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas
   Business and Commerce Code 305.053 because that claim: arises from the same
   nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds
   little complexity to the case; and doesn't seek money damages, so it is unlikely to
   predominate over the TCPA claims.

9. **Personal Jurisdiction.** This Court has general personal jurisdiction over the
   defendant because they have repeatedly placed calls to Texas residents, and derive
   revenue from Texas residents, and the sell goods and services to Texas residents,
   including the Plaintiff.

10. This Court has specific personal jurisdiction over the defendants because the calls at
    issue were sent by or on behalf of Jeff Lakes, Ramsey Services, LLC, National
    Consolidated Services, LLC, and Chandler Construction, LLC to Texas Residents,
    specifically the Plaintiff in this case. Even after calling Jeff Lakes personally to

inform him of the illegal telemarketing calls on October 2nd, 2018 and sending a copy

of the proposed agreement with the Plaintiff's name and Ramsey Debt Relief, the

Plaintiff recieved an additional 3 calls two days later on October 5, 2018. Despite

having sued, served, and the defendants obtaining counsel in this case, the Plaintiff

was called yet again on November 21, 2018 and connected to a company owned or

controlled by Jeff Lakes for the purposes of debt reduction services. The Plaintiff has

executed a supporting affidavit attesting that he was in Texas when he received the

calls.

11. **Venue.**  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2)

because a substantial part of the events giving rise to the claims—the calls and sale of

goods and services directed at Texas residents, including the Plaintiff—occurred in

this District and because the Plaintiff resides in this District. The Plaintiff was

residing in the Eastern District of Texas when he recieved a substantial if not every

single call from the Defendants that are the subject matter of this lawsuit.

12. This Court has venue over the defendants because the calls at issue were sent by or on

behalf of Jeff Lakes, Ramsey Services, LLC, National Consolidated Services, LLC,

and Chandler Construction, LLC to Texas Residents, specifically the Plaintiff in this

case. Even after calling Jeff Lakes personally to inform him of the illegal

telemarketing calls on October 2nd, 2018 and sending a copy of the proposed

agreement with the Plaintiff's name and Ramsey Debt Relief, the Plaintiff recieved an

additional 3 calls two days later on October 3rd, 4th, and 5th, 2018. Despite having

sued, served, and the defendants obtaining counsel in this case, the Plaintiff was

called yet again on November 21, 2018 and connected to a company owned or controlled by Jeff Lakes for the purposes of debt reduction services. Clearly, the defendants knew that calling 615-331-7262 would reach the Plaintiff's cell phone and that the Plaintiff was residing in Plano, Texas and that the calls were unwanted and yet they still continued to direct calls to the Plaintiff's cell phone while residing in Texas.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

13. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

14. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

15. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

16. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

17. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

18. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

19. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

20. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

21. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

22. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

23. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

24. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

25. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**The Texas Business and Commerce Code 305.053**

26. The Texas Business and Commerce code has an analogus portion that is related to the TCPA and was violated in this case.

27. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## FACTUAL ALLEGATIONS

28. Rachel with Card Services is the bane of the existance of many consumers. These are calls long since prosecuted by the FTC that make fraudulent, misleading, false promises and exaggerated claims to consumers. These scams have taken place for years and continue to this day. Jeff Lakes is the ring leader of one of these scam operations and has directed this scam to continue in the face of consumer complaints for years.

**Jeff Lakes and Ramsey Services, LLC aka Ramsey Debt Relief , Chandler Construction, LLC and National Consolidated Services, LLC calls to the Plaintiff**

29. Mr. Cunningham received multiple calls from a variety of spoofed caller ID's that contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls were on behalf of Jeff Lakes, Ramsey Debt Relief, LLC, aka Ramsey Services, LLC, National Consolidated Services, LLC, Chandler Construction, LLC. The calls had a delay of 3-4 seconds of dead air before the pre-recorded message began indicating the calls were initiated using an ATDS. The Plaintiff recieved calls directly from the corporations owned by Jeff Lakes and on behalf of these corporations by 3rd party telemarketers for both direct and vicarious

liability in this case.

30. Starting in 2016, the Plaintiff recieved multiple calls from multiple spoofed and non-working caller ID's all designed to trick consumers into picking up the phone by using false, misleading, and fraudulent caller ID's. These calls were not related to an emergency purpose or any

31. *"This is Lisa Storm calling in reference of all your Visa and Master Credit cards. Congratulations. You have been qualified from Experian to get relief from your payments. Please press 1 to get relief"* This call was from 615-331-7782 to 615-331-7262 on 10/2/2018.

32. The 7782 number is a non-working number and was picked specifically because it is very similar to the Plaintiff's actual phone number of 7262 and  is called "Neighborhood spoofing" designed to trick consumers into picking up the call as it appears to be a local call. This call contained a pre-recorded message after a 3-4 second pause of dead air. Upon further conversation with the representative who had a thick foreign accent and sounded as if he was calling from overseas, the Plaintiff was transferred live to a "verification" rep and then finally to an agent who stated he was with Ramsey Debt relief.

33. Interestingly enough, when the Plaintiff spoke with the "verification" rep, who sounded as if they were a native English speaker from the USA, and the verifier recorded a call and claimed their number was 888-353-3950, which is a lie as it is a non-working number and stated that there was a one time processing fee of $695 and stated that they are a 3rd party company that works with all major lenders and is not affiliated with the banks and are not with Visa or Mastercard or the agent that

transferred the call to them walking back their previous claims of being with Visa and Mastercard and Experian.

34. The Plaintiff called and spoke with Jeff Lakes on October 2nd, 2018 regarding the illegal telemarketing calls being placed to him and even played one of the call recordings for Jeff Lakes and emailed the application for services with Ramsey Debt Relief. Jeff admitted that he paid for telemarketing activities and claimed to work with multiple marketers. Jeff even stated that "I hate those calls" in reference to automated robo calls.

35. Despite this convesation directly with Jeff Lakes and Jeff Lakes knowing full well that dialing 615-331-7262 would reach the Plaintiff's cell phone in Plano, Texas, on October 5, 2018, the Plaintiff recieved another call pitching debt relief services by Jeff Lakes which was initiated using an automated telephone dialing system and contained a pre-recorded message. The message stated:

36. *"Hi this is Alice from Visa card services calling about your credit card account. It appears that you are now eligible for a significantly lower interest rate on your account, however, if you do not respond your card will be cancelled, so please press 1 now to be transferred to a live representative who can assist you in securing your lower interest rate. Again to talk to a representative, press 1 now"*

37. This call was from 800-945-2000, which is spoofed and is actually the caller ID for Chase Credit card services indicating an intent to mislead consumers into believing that they were receiving a call from Chase credit cards when in reality it was a debt relief company. The pre-recorded message was designed to create a false sense of urgency by indicating that the consumer's credit card would be closed if they didn't

press 1.

*38.* The Plaintiff recieved calls on 10/3/2018 and 10/4/2018 among other dates from 800-945-2000 which were transfered to Ramsey Debt Relief once again even after speaking directly with Jeff Lakes to complain about the illegal telemarketing calls and Jeff Lakes himself admitted that *"I hate those calls"* referring to the "Rachel with card services" type debt relief calls.

39. The Plaintiff has documented at least 19 calls from 800-945-2000 to his cell phone 615-331-7262 and has an additional 5 calls from 615-331-7782, 323-329-5648 three times, and 31008 for a total of not less than 27 calls by or on behalf of Jeff Lakes and Ramsey Debt Relief/Ramsey Services.

40.  Jeff Lakes knew who the Plaintiff was and that the Plaintiff was receiving unwanted calls. The Plaintiff emailed Jeff Lakes a copy of the contract which contained the Plaintiff's cell phone number at issue, 615-331-7262 to Jeff Lakes who replied that he was researching the issue and would get back to the Plaintiff, but the Plaintiff never heard back from Jeff Lakes( See Ex A and Ex B).

41. Even after filing suit, serving Jeff Lakes personally with a copy of the lawsuit and a summons, and the defendants hiring an attorney who appeared in the case, Jeff Lakes directed another call to the Plaintiff on November 21, 2018. The Plaintiff spoke with the overseas agent inquiring who the company was that he was connected to, and the agent stated it was Ramsey Debt Relief.

42. A representative of Ramsey Debt Relief stated that the corporation was actually incorporated in Nevada when asked by the Plaintiff and stated that attorney "Cori L. Marx" whose name and signature appears on the application document was licensed

out of Arizona, but later claimed it was Colorado.

43. Each and every call placed on behalf of and for the benefit of Cori L. Marx. She was paid by Jeff Lakes to assist in the debt relief program.

44. Mr. Cunningham has a limited data plan. Incoming text messages chip away at his monthly allotment.

45. Mr. Cunningham has limited data storage capacity on his cellular telephone. Incoming calls from Jeff Lakes and his related entities consumed part of this capacity.

46. No emergency necessitated the calls

47. Each call was sent by an ATDS.

### Ramsey Services LLC aka Ramsey Debt Relief's and  Willful Violations of Telemarketing Regulations

48. Mr. Cunningham asked for an internal do-not-call policy

49. Jeff Lakes knowingly violated the TCPA by initiating automated calls with pre-recorded messages to the Plaintiff.

50. Jeff Lakes never sent Mr. Cunningham any do-not-call policy.

51. On information and belief, Jeff Lakes, National Consolidated Services, LLC, Ramsey Services, LLC, and  did not have a written do-not-call policy while it was sending Mr. Cunningham text messages.

52. On information and belief, Jeff Lakes did not train its agents engaged in telemarketing on the existence and use of any do-not-call list.

53. Jeff Lakes  calls did not provide Mr. Cunningham with the name of the individual caller or the name of the person or entity on whose behalf the call was being made.

### Jeff Lakes' Control over Ramsey Debt Relief, LLC, aka Ramsey Services, LLC,

**National Consolidated Services, LLC, Chandler Construction, LLC,, Including its Illegal Robocalling and Telemarketing**

54. At all times relevant to the claims alleged herein, Jeff Lakes was the sole corporate officer and executive in charge of Ramsey Debt Relief, LLC, aka Ramsey Services, LLC, National Consolidated Services, LLC, Chandler Construction, LLC. Each and every call was placed on behalf of the corporate entites owned by Jeff Lakes. Jeff Lakes co-mingles funds and uses these entities as alter egos of each other.

55. Jeff Lakes is Ramsey Debt Relief, LLC, aka Ramsey Services, LLC, National Consolidated Services, LLC, Chandler Construction, LLC, incorporator.

56. Jeff Lakes was aware that Ramsey Debt Relief, LLC, aka Ramsey Services, LLC, National Consolidated Services, LLC, Chandler Construction, LLC, was sending automated, telemarketing text messages en masse to people, including Plaintiff, who had not requested to be contacted by Ramsey Debt Relief, LLC, aka Ramsey Services, LLC, National Consolidated Services, LLC, Chandler Construction, LLC.

57. As Ramsey Debt Relief, LLC, aka Ramsey Services, LLC, National Consolidated Services, LLC, Chandler Construction, LLC, senior-most executive, Jeff Lakes had the power to stop these spam campaigns.

58. As Ramsey Debt Relief, LLC, aka Ramsey Services, LLC, National Consolidated Services, LLC, Chandler Construction, LLC's, senior-most executive, Jeff Lakes had the power to fire the managers and employees taking part of the day-to-day operations of these illegal robocalling operations. Despite being sued by the Plaintiff for illegal telemarketing, Jeff Lakes continued to use the services of the exact same telemarketers, which resulted in the Plaintiff being called additional times on his

behalf and at his direction.

59.  Instead, Jeff Lakes allowed the calls to continue and the responsible managers to
     keep their jobs—despite his knowledge of frequent do-not-call complaints from
     recipients of these messages, including the Plaintiff.

### The Plaintiff's cell phone is a residential number

60.  The text messages were to the Plaintiff's cellular phonne 615-331-7262, which is the
     Plaintiff's personal cell phone that he uses for personal, family, and household use.
     The Plaintiff maintains no landline phones at his residence and has not done so for at
     least 10 years and primarily relies on cellular phones to communicate with friends and
     family. The Plaintiff also uses his cell phone for navigation purposes, sending and
     receiving emails, timing food when cooking, and sending and receiving text
     messages. The Plaintiff further has his cell phone registered in his personal name,
     pays the cell phone from his personal accounts, and the phone is not primarily used
     for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

61.  The actions of Jeff Lakes and his corporations Ramsey Debt Relief, LLC, aka
     Ramsey Services, LLC, National Consolidated Services, LLC, Chandler
     Construction, LLC, violated the Texas Business and Commerce Code 305.053 by
     placing automated calls to a cell phone which violate 47 USC 227(b). The calls by
     Jeff Lakes and his entities violated Texas law by placing calls with a pre-recorded
     message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47
     USC 227(d)(3) and 47 USC 227(e).

62.  The calls by Jeff Lakes violated Texas law by spoofing the caller ID's per 47 USC

227(e) which in turn violates the Texas statute.

## I.   FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1.      Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3.      Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.      Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.  SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6.      Mr. Cunningham realleges and incorporates by reference each and every

allegation set forth in the preceding paragraphs.

7.      The foregoing acts and omissions of Defendants and/or their affiliates or

agents constitute multiple violations of FCC regulations by making telemarketing

solicitations despite lacking:

        a.      a written policy, available upon demand, for maintaining a do-not-

call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

        b.      training for the individuals involved in the telemarketing on the

existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

        c.      in the solicitations, the name of the individual caller and the name

of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. §

64.1200(d)(4).[4]

8.      Mr. Cunningham is entitled to an award of at least $500 in damages for

each such violation. 47 U.S.C. § 227(c)(5)(B).

9.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for

each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

10.     Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11.     Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13.     Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation.**Texas Business and Commerce Code 305.053(b)**

14.     Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against
Defendant Jeff Lakes, Cori L Marx, Ramsey Debt Relief, LLC, aka Ramsey Services,
LLC, National Consolidated Services, LLC, Chandler Construction, LLC, jointly and
severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are
identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violate the
TCPA and Texas state law;

C.     An injunction enjoining Defendants and their affiliates and agents from
engaging in the unlawful conduct set forth herein;

D.     An award of $3000 per call in statutory damages arising from the TCPA
intentional violations jointly and severally against the corporation and individual for 30
calls.

E.     An award of $1,500 in statutory damages arising from violations of the
Texas Business and Commerce code 305.053

F.     An award to Mr. Cunningham of damages, as allowed by law under the
TCPA;

G.     An award to Mr. Cunningham of interest, costs and attorneys' fees, as
allowed by law and equity

H.     Such further relief as the Court deems necessary, just, and proper.

Craig Cunningham
Plaintiff,

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075

November 30, 2018.

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| **CRAIG CUNNINGHAM,**<br>**Plaintiff,**<br><br>v.<br><br>Jeff Lakes, Ramsey Debt Relief, LLC, aka Ramsey Services, LLC, National Consolidated Services, LLC, Chandler Construction, LLC, Cori L. Marx<br><br>**Defendant** | §<br>§<br>§<br>§<br>§  Civil Case No. 4:18-cv-00747-ALM-CAN<br>§<br>§<br>§<br>§ |
| | |

### Plaintiff's Certificate of Service

I hereby certify a true copy was sent to the defendants in this case.

Craig Cunningham
Plaintiff,

3000 Custer Road, ste 270-206, Plano, Tx 75075

11/30/3018

## UNITED STATES DISTRICT COURT FOR THE